UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DUSTIN HEFLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:21-CV-41 RLW |
| DANIEL REDINGTON, et al., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Anne Precythe's, Daniel Redington's, Lori Lewis's, and John Hilpert's ("State Defendants" or "Defendants") Motion to Dismiss. (ECF No. 40). Plaintiff Dustin Hefley opposes the motion and it is ready for disposition. (ECF No. 46). The Court will deny the motion for the reasons below.

**Background**

Plaintiff is an inmate at the Northeast Correctional Center ("NECC") in Bowling Green, Missouri. (ECF No. 38 at ¶ 37-38). Plaintiff states that, at all relevant times, Defendant Precythe was the Director of the DOC; Defendant Redington was the Warden at NECC; and Defendant Lewis was the Deputy Warden at NECC. *Id.* at ¶¶ 7, 17, 20. Plaintiff states that Defendant Hilpert is the current Deputy Warden of NECC and has been since September 2017. *Id.* at ¶ 23. Plaintiff sues Defendant Precythe in her official capacity. *Id.* at ¶ 8. He sues the remaining State Defendants in their individual and official capacities. *Id.* at ¶¶ 19, 22, 25.

In Count I of his First Amended Complaint, Plaintiff asserts that State Defendants were deliberately indifferent to his serious medical needs in violation of the Fourth, Fifth, Eighth, and

Fourteenth Amendments. *Id*. at ¶¶ 139-162.[1] Plaintiff states that State Defendants were responsible for the policies and procedures that ultimately allowed prison officials to all-but disregard his medical complaints. *Id.* at ¶¶ 9, 16, 18, 21, 24.

According to Plaintiff, he first arrived at NECC on August 28, 2018, and immediately sought medical attention for a rash on his hands and midsection. *Id.* at ¶¶ 37-39. He alleges that several nurses and physicians misdiagnosed his condition over the next year. *Id.* at ¶¶ 38-43. Finally, on September 20, 2019, a dermatologist diagnosed Plaintiff with scabies. *Id.* at ¶¶ 45-46. Plaintiff asserts that prison medical staff seemingly ignored this diagnosis and continued to treat him for other skin conditions over the next several months. *Id.* at ¶¶ 50-66.

Plaintiff also states that he suffered a broken clavicle after falling from his bunk on January 2, 2020. *Id.* at 67. According to Plaintiff, medical staff told him to "stop complaining" and declined his request to go to the hospital for treatment. *Id*. at ¶ 70. Plaintiff asserts that officials also denied his request for an orthopedic referral even after an x-ray confirmed his fracture. *Id.* at ¶¶ 78-79. Plaintiff avers that prison officials refused to provide Plaintiff with a bottom bunk, leaving him to sleep in a plastic chair for 26 days. *Id.* at ¶¶ 71-93. Plaintiff states that he finally received corrective surgery on July 6, 2020, following various delays attributable to State Defendants. *Id.* at ¶ 102.

Lastly, Plaintiff asserts that he filed a Health Services Request ("HSR") on September 26, 2017, for his tooth pain. *Id.* at ¶ 106. Medical staff informed Plaintiff that he was on "a list" to have teeth pulled and receive partial dentures. *Id.* at ¶ 108. Plaintiff claims that he filed various

---

[1] On February 13, 2023, Corizon filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas. (ECF No. 84). The filing of a bankruptcy petition triggers an automatic stay of all ongoing judicial proceedings against a debtor that were filed before the bankruptcy petition. 11 U.S.C. § 362(a)(1). The automatic stay does not apply to State Defendants. *See In re Panther Mountain Land Dev., LLC*, 686 F.3d 916, 921 (8th Cir. 2012) ("The automatic stay does not, in general, apply to actions against third parties.").

complaints and additional HSRs over the next three years. *Id.* at ¶¶ 109-130. According to Plaintiff, he has only received some extractions and has yet to receive dentures. *Id.* at ¶ 130.

## Legal Standards

### I. Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss an action based on a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citation omitted). "The standard for a motion to dismiss under Rule 12(b)(6) applies equally to a motion to dismiss for lack of subject matter jurisdiction which asserts a facial challenge under Rule 12(b)(1)." *Gist v. Centene Mgmt. Co., LLC*, No. 4:21CV562 RLW, 2021 WL 3487096, at *2 (E.D. Mo. Aug. 9, 2021).

### II. Failure to State a Claim upon Which Relief Can Be Granted Under Rule 12(b)(6)

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff is entitled to relief by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all factual allegations and construes all reasonable inferences in the light most favorable to the nonmoving party. *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 607 (2019). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When

considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Rather, legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id*. "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

## Discussion

### I. Sovereign Immunity

State Defendants argue that the Eleventh Amendment bars Plaintiff's official-capacity claims. (ECF No. 41 at 3). Plaintiff agrees he cannot bring claims against state officials in their official capacities for monetary damages. (ECF No. 46 at 8). Plaintiff asserts, however, that the Eleventh Amendment does not protect officials from claims for injunctive relief. *Id.* The Court agrees with Plaintiff.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court held in 1890 that the same immunity applies to suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 14–15 (1890).

It is well established that the Eleventh Amendment bars suits against the state for monetary damages. *Edelman v. Jordan*, 415 U.S. 651, 663 (1973) (citations omitted). As the parties recognize, government officials enjoy the same immunity because naming such an official in his official capacity is the same as naming the governmental entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff clarifies in his Memorandum in

Opposition that he does not intend to pursue damages from State Defendants in their official capacities. (ECF No. 46 at 8).

The Eleventh Amendment does not, however, prohibit official-capacity claims for injunctive relief against state officials. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Here, Plaintiff avers in Count I that "[u]nless Defendants are *enjoined*, they will continue to violate Plaintiff's constitutional rights[.]" (ECF No. 38 at ¶ 162) (emphasis added). In his Prayer for Relief, Plaintiff requests "equitable and preliminary and permanent injunctive relief[.]" *Id.* at 28. State Defendants do not address equitable relief in their Memorandum in Support and have not filed a reply memorandum. Simply put, State Defendants offer no reason why the Court should dismiss Plaintiff's claims for equitable relief. Thus, the Court will deny State Defendants' Motion to Dismiss on the basis of sovereign immunity because Plaintiff seeks only equitable relief for his official-capacity claims.

## II. Qualified Immunity

State Defendants next argue that they are entitled to qualified immunity on Plaintiff's individual-capacity claims. (ECF No. 41 at 5). Plaintiff counters that qualified immunity is unavailable because State Defendants deprived Plaintiff of his well-established right to medical care. (ECF No. 46 at 9-17). The Court again agrees with Plaintiff.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional

5

or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Stark v. Lee Cnty.*, 993 F.3d 622, 625 (8th Cir. 2021) (citation omitted). Dismissal on the basis of qualified immunity is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (citation and internal quotation marks omitted).

Here, Plaintiff asserts that State Defendants were deliberately indifferent to his serious medical needs. (ECF No. 38 at ¶¶ 139-162). It is well established that "deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (citations omitted). But the inquiry does not end there. To establish a claim of deliberate indifference to a serious medical need, Plaintiff must show that he suffered from one or more objectively serious medical needs and that prison officials knew of but deliberately disregarded those needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (citation omitted). An objectively serious medical need is one that is "either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Id.* (citation and internal quotation marks omitted). To show that prison officials knew of but deliberately disregarded his needs, Plaintiff must demonstrate that the officials actually knew that he faced a risk of serious harm and did not respond reasonably to that risk. *Id.* (citation omitted).

Here, Plaintiff asserts that he suffered from scabies, a broken clavicle, and dental issues. (ECF No. 38). Plaintiff further alleges that State Defendants are responsible for "[t]he safety, well-being, medical care, and mental health needs of individuals incarcerated at NECC, including Plaintiff[.]" *Id.* at ¶¶ 9, 18, 21, 24. State Defendants do not address whether Plaintiff's needs were objectively serious or whether State Defendants actually knew of but disregarded those needs.

6

Instead, State Defendants simply conclude: "Plaintiff has failed to allege specific facts that demonstrate a constitutional violation, much less a clearly established right." (ECF No. 41 at 6).

The facts alleged, construed in the light most favorable to Plaintiff, demonstrate a plausible claim that State Defendants violated a constitutional right that was clearly established at the time of the violation. Put another way, it is foreseeable that Plaintiff could prove facts that support his claim to relief. *See Hafley*, 90 F.3d at 266. Thus, at this early stage, the Court will not dismiss Plaintiff's individual-capacity claims on the basis of qualified immunity.

### Conclusion

For the reasons above, the Court will not dismiss Plaintiff's official-capacity claims on the basis of sovereign immunity. The Court will also not dismiss Plaintiff's individual-capacity claims on the basis of qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Anne Precythe's, Daniel Redington's, Lori Lewis's, and John Hilpert's Motion to Dismiss is **DENIED**. (ECF No. 40).

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 16th day of March, 2023.